**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Marquez et al., </br></br>　　　　Plaintiffs, </br></br>vs. </br></br>City of Phoenix et al., </br></br>　　　　Defendants. | CV 08-1132-PHX-NVW </br></br>**ORDER** |

Pending before the Court is Defendant Taser International Inc.'s Motion for Discovery Dispute Resolution Re Expert Fees (doc. #131), which Defendants Guliano, City of Phoenix, and Joshua Roper have joined (doc. #133).

**I.　Background**

**　A.　Plaintiffs' Complaint**

Plaintiffs are the family members of decedent Ronald Marquez. Plaintiffs allege that on July 28, 2007, they summoned the Phoenix police in the hopes of diffusing a family dispute. The family was concerned that Mr. Marquez's daughter, Cynthia, was trying to "save" her three-year-old daughter Destiny by ridding her of demons. When Officers Roper and Guliano arrived at the house, the Marquez family directed them to a back bedroom, where they apparently saw Mr. Marquez lying on a bed and holding his granddaughter Destiny. Officers Roper and Guliano then allegedly proceeded to deploy Officer Roper's taser twenty-two times for a total of 123 seconds on or around Mr. Marquez although he was clearly unarmed and carrying a young child. The officers then

handcuffed Mr. Marquez. However, shortly thereafter Mr. Marquez experienced cardiac distress and died. Mr. Marquez's autopsy report revealed that the cause of death was excited delirium from being subjected to the taser. Plaintiffs subsequently filed suit against the City of Phoenix, Officer Roper, Officer Guliano, asserting various state and federal claims, and against Taser International Inc., the manufacturer of Officer Roper's taser, under a products liability theory.

### B. Discovery Dispute

This discovery dispute arose because Plaintiffs deposed six of Taser's experts and the expert for the City of Phoenix but refused to pay expert deposition fees. Plaintiffs contend that they are indigent and need not pay the fees under the "manifest injustice" exception to Fed. R. Civ. P. 26(b)(4)(C). In the alternative, Plaintiffs request that the Court reserve judgment on Defendants' motion for fees until the case is finally resolved.

## II. Analysis

"A party may depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). "Unless manifest injustice would result, the court must require that the party seeking discovery . . . pay the expert a reasonable fee for time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(C). There is no definition for "manifest injustice" in the rules. However, the Advisory Committee Notes explain that the court "can protect, when necessary and appropriate, the interests of an indigent party." Fed. R. Civ. P. 26(b)(4)(C) advisory committee's note.

"To apply the exception, the court must find that the plaintiff is 'either indigent or that requiring him to pay a deposition fee incurred in litigation that he voluntarily initiated would create an undue hardship.'" *Harris v. San Jose Mercury News, Inc.*, 235 F.R.D. 471, 473 (N.D. Cal. 2006) (quoting *Edin v. The Paul Revere Life Ins. Co.*, 188 F.R.D. 543, 547 (D. Ariz. 1999)). To determine whether undue hardship would result, the court must "weigh the possible hardships imposed on the respective parties . . . [and] balance

the need for doing justice on the merits between the parties . . . against the need for maintaining orderly and efficient procedural arrangements." *Reed v. Binder*, 165 F.R.D. 424, 427-28 (D.N.J. 1996).

Plaintiffs should have notified the Court in advance that they could not pay for the depositions of Defendants' experts. The Court could have then fashioned appropriate relief, if necessary, to protect Defendants from undue expense. *See Harris*, 235 F.R.D. at 474 (where plaintiff informed the court that he would suffer undue hardship if required to pay for the deposition of defendant's expert, court allowed limited three-hour deposition of two of the defendant's experts, but prevented plaintiff from deposing the defendant's three other experts because plaintiff had previously deposed one expert, had been given reasonably detailed expert reports, and had his own experts covering many of the issues to which defendant's experts would testify). This does not necessarily prevent the Court from granting relief. *See Reed,* 165 F.R.D. at 424 (shifting cost of deposition to defendants although plaintiffs had already taken depositions because it would have been manifestly unjust to require impoverished plaintiffs to pay). But the Court also does not wish to encourage litigants to subject their opponent to significant expense, knowing full well that they are unable to pay and depriving the Court of the opportunity to protect the opponent, and to then claim that manifest injustice would result if ordered to reimburse the opponent.

Plaintiffs have vigorously prosecuted their case. Plaintiffs have taken twenty-one depositions, including costly out-of-state and video depositions. Defendants provided detailed expert reports to Plaintiffs, which may have obviated the need for some of those depositions. Plaintiffs, however, never notified opposing counsel or the Court that they would not be able to pay for taking those depositions. Plaintiffs have also hired their own experts, whose fees are presumably being advanced by Plaintiffs' attorney. Plaintiffs' attorney explicitly agreed to pay for the deposition and for one-third of the travel costs of one of the experts for Defendant City of Phoenix, and Plaintiffs' attorney has remitted

payment to at least one of the City of Phoenix's experts. Plaintiffs' attorney represented to counsel for Taser that he expected to be able to pay the expert invoices for the depositions he had taken by December 1, 2009. Now Plaintiffs' attorney claims that manifest injustice would result if his clients were required to pay for the experts he decided to depose, without explaining why payment was made to some experts but not others or why representations were made to opposing counsel that payment would be forthcoming.

In short, Plaintiffs, no doubt through the advancement of costs by their attorney, have met the expense of the depositions Plaintiffs thought helpful to the preparation of their case. The election to depose the Defendants' experts is not different in character from the election to pursue, and advance the costs of, other depositions for Plaintiffs' trial advantage. Rule 26(b)(4)(C) requires parties generally to bear the expense of deposing opposing parties' expert witnesses, and Plaintiffs obviously thought it to their benefit to do so in this case.

There is no manifest injustice in requiring Plaintiffs to pay Defendants' expert fees under these circumstances.

IT IS THEREFORE ORDERED that Defendants' Motion for Discovery Dispute Resolution re Expert Fees (doc. #131) is granted.

DATED this 22nd day of January, 2010.

                                  *Neil V. Wake*
                                  Neil V. Wake
                               United States District Judge